# United States Court of Federal Claims

No. 16-1113C
(Filed: October 20, 2016)
Reissued: November 23, 2016[1]

_____
                                                    )
VETERANS ELECTRIC, LLC,                             )
                                                    )
           Plaintiff,                               )
                                                    )
           v.                                       )
                                                    )
THE UNITED STATES,                                  )
                                                    )
           Defendant.                               )
_____)


*Joseph A. Whitcomb*, Whitcomb Law, PC, Denver, CO, attorney for plaintiff.

*Albert Salvatore Iarossi*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

***SMITH*, Senior Judge**

      This bid protest comes before the Court on the parties' cross-motions for judgment on the Administrative Record.  Plaintiff, Veterans Electric, LLC ("VE" or "Veterans Electric"), challenges the Department of Veterans Affairs ("VA" or "Agency") Solicitation No. No: VA786-16-Q-0129 ("Solicitation," "Request for Proposals," or "RFP").   Plaintiff argues that the procurement decision lacked a rational basis and/or violated regulations because Architectural Consulting Group, Inc. ("ACG") is unqualified to perform the work required under the solicitation and the award was made in violation of VA Acquisition Regulation § 852.219-10 ("VAAR").

      This Court's bid protest jurisdiction covers an enormous diversity of procurement disputes and a large dollar range.  For example, a $6 billion dispute was just settled before this Court relatively quickly.  The case at bar has been disputed before both the Agency and the Government Accountability Office ("GAO").  The dollars involved in the procurement are

---

[1] An unredacted version of this opinion was issued under seal on October 20, 2016.  The parties were given an opportunity to propose redactions, but no such proposals were made.

certainly disproportionate to the legal costs involved in this dispute.  Of course this Court is as willing to decide a $100 dispute as it is a $10 billion dollar dispute.  But the cost to the parties is a legitimate concern of this Court since it has a duty to further the efficient administration of justice.  In this case the parties did litigate the matter efficiently and well, so no criticism is intended.  The plaintiff is litigating for a principle.  The government is defending for a different principle.  The plaintiff's principle is that the government must treat all bidders fairly.  The government's principle is that the dispute must be governed by the rules and by the solicitation.  Both principles are correct.  Unfortunately the Court cannot award relief on the basis of a principle without a legal right.  Plaintiff must show that he was treated unfairly by being required to meet a different standard in the solicitation and its review by the government than was the awardee.

Plaintiff submitted an A++ proposal for $19,250.00, while ACG submitted a somewhat ambiguous proposal for $13,400.  Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "MJAR") at 4.  For a contract of this size, this difference in dollar amount is significant.  As ACG has completed similar jobs for the Agency, the government was understandably comfortable with ACG.  ACG's ambiguous proposal was understood in the light of this significant past performance, as well as in the light of the fact the government would save almost 44% of the contract total by awarding the contract to ACG.  The plaintiff's complaint raises the following question: did the VA's award to ACG despite the ambiguous nature of its proposal violate any procurement rules?  After a thorough review of the Administrative Record, this Court cannot find any violation of law occurred in this award.  ACG's proposal met all of the Solicitation's requirements.  While a third party reading ACG's proposal might have a number of questions, the Agency, familiar with ACG and the solicitation as a whole, did not.  The Court can certainly understand plaintiff's concerns in light of the record as a whole.  While government procurement law does not allow credit for the goodwill created by past performance and prior positive relationships with contractors, it is impossible to eliminate the knowledge and memories of procurement officers gained from past dealings when they are reviewing the factual descriptions in the proposal.  Thus, as no violation of procurement rules or regulation occurred, and as no unfair actions were taken by the procurement officials in favoring ACG, the Court must deny this protest.

## I.     Findings of Fact

On March 1, 2016, the VA issued a solicitation for electrical services in order to upgrade the Monument Circle lighting circuit at Wood National Cemetery in Milwaukee, Wisconsin.  Complaint (hereinafter "Compl.") at 6.  The Solicitation is a 100 percent Service Disabled Veteran Owned Small Business ("SDVOSB") set-aside contract.  *Id*. at 2.  Offers were to be evaluated on the best value Lowest Price Technically Accepted ("LPTA") basis.  *Id*.  The following three factors would be used to evaluate offerors: (1) price, (2) Technical Qualifications, and (3) Past Performance.  Administrative Record, page 14 (hereinafter "AR __").  The contract would be awarded "on the basis of the lowest evaluated price of proposals meeting or exceeding the technical acceptability standards for non-cost factors."  *Id*.

Two proposals, one from Veterans Electric and one from ACG, were submitted in response to the RFP. Defendant's Motion for Judgment on the Administrative Record (hereinafter "CMJAR") at 4. ACG submitted a proposal with a bid of $13,400.00, and VE submitted a proposal with a bid of $19,250.00. MJAR at 4. The proposals were both evaluated, and each proposal received a "Technically Acceptable" rating. *Id*. at 5; AR 150-57. ACG received the contract award on April 6, 2016. AR 161.

On April 12, 2016, the VA issued a debriefing memo at the request of Veterans Electric. AR 162. That same day, Veterans Electric filed an Agency level protest with the VA, arguing that ACG's proposal was *per se* unacceptable because it listed an inapplicable North American Industry Classification System ("NAICS") code. CMJAR at 6. As a result of that protest, a Stop Work Notice was issued to ACG on April 14, 2016. AR 159. The award was then affirmed on April 18, 2016, when the Contracting Officer issued a response to VE's arguments. AR 246-48.

Veterans Electric then filed a protest with the GAO on May 26, 2016, again arguing that ACG used the wrong NAICS code, that ACG was not a qualified electrical contractor and would have to subcontract out most of the work, and that ACG's lower price point was dubious and subjected the government to liability and increased costs. MJAR at 5; AR 268-71. The GAO denied VE's protest on August 25, 2016. AR 260-63. On September 7, 2016, this complaint followed. *See generally*, Compl. Plaintiff argues that the procurement decision lacked a rational basis and/or violated regulations because ACG is unqualified to perform the work required under the solicitation and the award was made in violation of VAAR § 852.219-10. Oral Argument was held on October 5, 2016, and the Cross-Motions for Judgment on the Administrative record are now ripe for decision.

## II.     Discussion

### A.     Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States…in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's standard of review for an agency action. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Under Rule 52.1 of the Rules of the Court of Federal Claims, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See id*. at 1354. Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id*. at 1355.

Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1) which requires the bid protest to be brought by an "interested party." A protestor is an "interested party" if it is an "(1) actual or prospective bidder and (2) possess[es] the requisite direct economic interest." *Weeks Marine, Inc., v. United States*, 575 F.3d 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). "To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract." *Id.*; *see also Info. Tech. & Appl. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."); *see also Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1580 (Fed. Cir. 1996). The nature of the protest will dictate the necessary factors for a "direct economic interest." *Sys. Appl. & Techs. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).

**B.     Technical Requirements**

Plaintiff argues that the Contracting Officer's decision to award the contract to ACG lacked a rational basis or involved a violation of regulation or procedure because ACG failed to comply with the technical requirements of the RFP. MJAR at 10. In making this argument, plaintiff alleges that ACG did not provide a work plan, and, as such, its proposal was technically deficient. *Id*. Plaintiff points to the following description from the Solicitation:

> Technical capability will be evaluated to determine the extent to which it demonstrates a clear understanding of all features involved in performance of the requirements identified in the SOW. The proposal should not simply restate the Government's requirements, but it should describe, in detail, how the Offeror intends to meet the requirements.

*Id.*; AR 14. Plaintiff attempts to argue that this description creates the requirement that all offerors submit a work plan along with their proposal. This Court does not agree with that assertion.

The Solicitation provides five ways in which an offeror can demonstrate its technical qualifications: summarizing past experience, indicating the qualifications of key personnel, providing a list of personnel and equipment, submitting a "performance plan," and demonstrating "Overall Technical Acceptability." AR 14. Defendant argues that the Solicitation merely requires that "offerors must demonstrate their technical qualifications." CMJAR at 10. This Court finds that interpretation to be more persuasive. The simple fact that an offeror *may* submit a "performance plan" in order to demonstrate its technical qualification, does not, in and of itself, create a requirement that all offerors use that same method of demonstration.

Plaintiff further argues that the award was defective because ACG failed to provide information related to employees' electrician licenses, which runs afoul of Wisconsin law. MJAR at 10. This Court rejects that argument for two reasons. First, nothing in the Solicitation required that licenses be provided along with proposals. Plaintiff points to AR 51 in citing to the alleged requirement that offerors provide licenses. *Id*. Defendant correctly asserts that "the only plausible source for this 'requirement' on that page is VAAR 852.236-91" which states that the signing of a bid by an offeror indicates that "if newly entering into a construction activity, bidder has made all necessary arrangements for personnel, construction equipment, and required licenses to perform construction work." CMJAR at 12, citing VAAR 852.236-91(a)(2). Defendant also argues that, even if this language was construed as a requirement that offerors provide licensing information, ACG would not be subject to that clause as ACG has extensive construction history and is not "newly entering into a construction activity." *Id*. This Court finds defendant's argument persuasive.

Additionally, this Court acknowledges that Wisconsin law requires a license to "install, repair, or maintain electrical wiring." *Id*.; Wisconsin Administrative Code § SPS 305.40. However, this provision affects the contract's administration, as opposed to ACG's technical qualification for the award. In bid protest cases, this Court does not exercise jurisdiction over whether a contractor will comply with the requirements of its contract. *See Precision Standard, Inc. v. United States*, 69 Fed. Cl. 738, 755 (2006) (finding an awardee's ultimate compliance with a subcontractor limitation clause was a matter of contract administration which the Court does not review in a bid protest context). As such, this court must reject plaintiff's argument that the Contracting Officer was arbitrary and capricious or in violation of regulation or procedure in awarding the procurement to ACG.

### C. ACG's Qualification

Plaintiff argues that the Contracting Officer's decision to award the contract to ACG lacked a rational basis or involved a violation of regulation or procedure because ACG was not qualified to perform the work required under the Solicitation. MJAR at 11. In making this argument, plaintiff asserts that ACG should not have been deemed qualified because the proper NAICS code was not included in its System for Award Management ("SAM") registry or anywhere within its proposal. *Id*. The Solicitation includes NAICS code 238210 and specifies that offerors should have a size standard of $15 million. AR 4. NAICS code 238210 is not included in ACG's SAM registry. AR 273. However, lacking a specific NAICS code will not preclude a potential offeror from receiving a procurement award. The Small Business Administration's ("SBA") website says the following:

> Your business may have a myriad of capabilities, and the NAICS code for a given procurement opportunity may not be the same as your primary NAICS code. That will not keep you from bidding or making an offer, so long as you meet the size standard for the

> procurement and have the capacity to provide the goods or services.

AR 246; *see also* http://www.sba.gov/contracting/getting-started-contractor/determine-your-naics-code (accessed October 14, 2016).  The NAICS code provided by ACG is 541310, which has a $7.5 million size standard.  AR 136; *see also* 13 C.F.R. § 121.201.  As such, this Court must agree with defendant's assertion that "the agency had a reasonable basis to conclude that the awardee met the size standards required by the Solicitation."  CMJAR at 15.  Furthermore, the GAO has routinely ruled that there is "no statutory or regulatory requirement for the NAICS code in a solicitation to be listed in an offeror's [SAM predecessor database]."  *High Plains Computing, Inc. d/b/a HPC Solutions*, B-409736.2, Dec. 22, 2014, 2014 CPD ¶ 379 at 6-7 (citing *S4, Inc.*, B-299817, Aug. 23, 2007, CPD ¶ 164 at 8).  While this Court is not bound by the decision of the GAO, that logic is persuasive.  The decision to award the procurement to an offeror without the exact NAICS code listed in the Solicitation was neither arbitrary nor capricious and was not a violation of law or procedure.

Finally, plaintiff argues that ACG should not have been awarded the contract because it was not a registered service disabled, veteran-owned small business ("SDVOSB").  MJAR at 12.  Plaintiff points out that the C.F.R. requires that "at least 25 percent of the cost of the contract performance incurred for personnel will be spent on the concern's employees or the employees of other eligible service-disabled veteran-owned small business concerns."  48 C.F.R. § 852.219-10(c)(4).  However, nothing in that clause requires self-performance by the awardee of the contract.  If ACG were to sub-contract out not less than 25% of the work to an SDVOSB, it would not be in violation of that provision.  Plaintiff counters this argument by pointing out that "[t]o the extent ACG intended to sub out the contract to another SDVOSB-eligible concern, its proposal is silent."  While that may be true, it is again important to note that the Court of Federal Claims historically does not extend its jurisdiction to contract administration in bid protest cases.  At present this Court is loath to sway from that tradition and must deny the protest.

### III.  Conclusion

This Court does not come to this decision lightly.  It is clear that the Agency was comfortable with ACG.  The VA has previously contracted with ACG, and it seems obvious that the Agency understood ACG's proposal with the knowledge gained from its past performance.  That said, ACG did submit the lowest priced technically acceptable proposal.  VE's proposal was 44% higher than the one submitted by ACG.  As ACG's proposal did not violate any of the requirements of the Solicitation, the VA rationally could award the contract to ACG.  The Court must thus uphold the award and deny the protest.

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is **DENIED**.  Additionally, defendant's CROSS-MOTION for Judgment on the

Administrative Record is **GRANTED**. The Clerk is directed to enter judgment on the Administrative Record in favor of defendant, consistent with this Opinion.[2]

  **IT IS SO ORDERED.**

               s/ *Loren A. Smith*
               Loren A. Smith,
               Senior Judge

---

[2] This opinion shall be unsealed, as issued, after November 3, 2016, unless the parties identify protected and/or privileged materials subject to redaction prior to that date. Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.